UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MCOM IP, LLC,<br><br>    *Plaintiff*,<br><br>vs.<br><br>NAUTILUS HYOSUNG AMERICAS, INC. D/B/A HYOSUNG AMERICAS,<br><br>    *Defendant*. | Case No. 3:21-cv-02215 |

**<u>DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................................1

II. FACTUAL BACKGROUND................................................................................................2

III. APPLICABLE LAW..............................................................................................................5

    A. The Two-Part Test for Patent-Eligible Subject Matter.....................................................5

        1. Step One: Are the Asserted Claims Directed to an Abstract Idea?......................7

        2. Step Two: Do the Asserted Claims Recite Additional Elements Sufficient to Transform the Asserted Claims Into Patent-Eligible Subject Matter?.............8

IV. ARGUMENT..........................................................................................................................8

    A. The '508 Patent's Claims Are Invalid Under 35 U.S.C. § 101 .......................................9

        1. Step One: The Asserted Claims Recite an Abstract Idea ....................................9

        2. Step Two: The Asserted Claims Do Not Recite Inventive Concepts that Transform the Recited Abstract Idea Into Patent-Eligible Subject Matter ........12

V. CONCLUSION.....................................................................................................................14

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                     Page(s)

*Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018) ............... 1
*Accenture Glob. Servs. v. GuideWire Software, Inc.,* 728 F.3d 1336, 1344 (Fed. Cir. 2013) ................. 7
*Alice Corp. Pty. Ltd., v. CLS Bank Int'l,* 134 S. Ct. 2347, 2354 (2014) ................................................... 5
*Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 749 (Fed. Cir. 2019) ........ 6
*Bilski v. Kappos,* 561 U.S. 593, 602 (2010) ................................................................................................ 5
*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 887-89 (Fed. Cir. 2019) .................. 8
*buySAFE, Inc. v. Google, Inc.*, 765 F3d 1350, 1355 (Fed. Cir. 2014) ...................................................... 10
*ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019) .......................................... 8
*Content Extraction and Transmission, LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed
    Cir. 2014) ................................................................................................................................................ 7
*Elec. Power Grp., v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) ................................................. 6
*Gaelco S.A. v. Arachnid 360*, LLC, 293 F. Supp. 3d 783, 791 (N.D. Ill. 2017) ....................................... 9
*In re Morsa*, 809 Fed. Appx. 913, 917 (Fed. Cir. 2020) ............................................................................ 8
*In re TLI Communications LLC Patent Litigation*, 823 F.3d 607, 612-613 (Fed. Cir. 2016) ................. 8
*Intellectual Ventures I LLC v. Cap. One Bank (USA),* 792 F.3d 1363, 1369 (Fed. Cir. 2015) ................ 8
*Intellectual Ventures I*, 792 F.3d at 1369; *In re Morsa,* 809 Fed. Appx. 913, 917 (Fed. Cir. 2020) ..... 10
*Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015) ......................... 12
*Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1342 (Fed. Cir. 2018) .......................................... 6
*LendingTree, LLC v. Zillow, Inc.*, 656 F. App'x 991, 995 (Fed. Cir. 2016) ............................................ 11
*Maxon, LLC v. Funai Corp., Inc.,* 255 F. Supp. 3d 711, 722 (N.D. Ill. 2017), *aff'd*, 726 F. App'x 797
    (Fed. Cir. 2018) ..................................................................................................................................... 16
*NetSoc, LLC v. Match Group, LLC*, 838 Fed.Appx. 544 (Fed. Cir. 2020) .............................................. 8
*NetSoc, LLC v. Match Grp., LLC*, No. 3:18-cv-01809-N, 2019 WL 3304704, at *2 (N.D. Tex. July 22,
    2019) ...................................................................................................................................................... 1
*OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015) ........................................ 9
OpenTV v. Netflix, 76 F. Supp. 3d 886 (N.D. Cal. 2014) ........................................................................ 12
*Phoenix Licensing, LLC v. Consumer Cellular Inc.*, No. 2:16-CV-0152-JRG-RSP, 2017 WL 1065938,
    at *18 (E.D. Tex. Mar. 8, 2017) ........................................................................................................... 13
*Planet Bingo*, 576 F.Appx. 1005, 1007-08 (Fed. Cir. 2014) .................................................................... 9
*Planet Bingo, LLC v. VKGS LLC*, 576 Fed.App'x. 1005, 1007 (Fed. Cir. 2014) ................................... 7
*SAP America, Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1165-67 ............................................................... 9
*Ultramercial*, 772 F.3d at 717; *see also Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada
    (U.S.)*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012) ................................................................................. 6
*Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714-720 (Fed. Cir. 2014) ............................................. 2
*Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019) ............... 9
*USADATA Inc. v. DataWidget LLC*, No. CV-21-00526-PHX-DLR, 2021 WL 5084283, at *2 (D. Ariz.
    Nov. 1, 2021) ........................................................................................................................................ 13
*Wireless Media Innovations, LLC v. Maher Terminals, LLC*, 100 F. Supp. 3d 405, 413 (D.N.J. 2015) . 9

I.   **INTRODUCTION**

mCom IP, LLC ("Plaintiff") asserts U.S. Patent No. 8,862,508 (the "'508 Patent") against Nautilus Hyosung Americas, Inc. ("Hyosung"). But on its face, the '508 Patent is invalid for claiming patent-ineligible subject matter under 35 U.S.C. § 101. Because no factual allegations prevent resolving this issue as a matter of law, Hyosung asks the Court to dismiss Plaintiff's claims with prejudice. *See, e.g., NetSoc, LLC v. Match Grp., LLC*, No. 3:18-cv-01809-N, 2019 WL 3304704, at *2 (N.D. Tex. July 22, 2019) ("Patent eligibility under section 101 may be determined at the rule 12(b)(6) stage," where, as here, "'there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law.'" (quoting *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018))) (granting § 101 motion at 12(b)(6) stage), *aff'd* 838 F. App'x 544 (Fed. Cir. 2020).

The Federal Circuit and district courts consistently invalidate patents directed to targeted marketing. The '508 Patent claims precisely this but limited to the e-banking industry: (1) monitoring any e-banking interface used by a banking customer; (2) selecting targeted marketing content for that customer; and (3) transmitting targeted marketing to customer based on user preferences.

The '508 Patent's purported goal is to "provide an innovative system and method utilizing an added-value platform for unifying e-banking touch points and *enabling a personalized customer experience*."[1] The '508 Patent explicitly claims implementing this idea using standard components and technologies.[2] The '508 Patent does not claim a technical solution that improves networking, processing, or data handling. The '508 Patent, instead, is directed to targeted marketing – an abstract idea – implemented in a generic e-banking environment.

---

[1] Dkt. No. 1-1 (the "'508 Patent") at 2:1-4 (emphasis added).
[2] *See e.g.,* '508 Patent at 3:33-41 (e-banking touch points may include ATMs, coin counters, kiosks, etc.).

1

There is no new technology in the '508 Patent that justifies or permits patentability. And there is no need to wait for the expense of discovery before deciding upon the '508 Patent's subject matter eligibility. In fact, resolving subject matter patentability at the outset of a case is "the most efficient and effective tool for clearing the patent thicket," saves judicial and party resources, and protects the public from "patents that stifle innovation and transgress the public domain." *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714-720 (Fed. Cir. 2014) (Mayer, J., concurring). Plaintiff's asserted claims are invalid as a matter of law, and the complaint should be dismissed with prejudice.

## II.   FACTUAL BACKGROUND

Plaintiff asserts at least claim 13 of the '508 Patent.[3] To implement the abstract idea of transmitting targeting marketing content, claim 13 relies on conventional components and technology: an e-banking touch point (*e.g.,* an ATM); a data storage device; a multi-channel server; and computer systems. Claim 13 recites:

> *A unified electronic banking system, said system comprising:*
>
> *a common multi-channel server, wherein said multi-channel server is communicatively coupled to one or more independent computer systems; wherein each of one or more independent computer systems is associated with an independent financial institution, and each of said computer systems is communicatively coupled to said multi-channel server;* [**multi-channel server and a bank's computer systems communicate**]
>
> *one or more e-banking touch points, each of which comprise one or more of an automatic teller/transaction machine (ATM), a self-service coin counter (SSCC), a kiosk, a digital signage display, an online accessible banking website, a personal digital assistant (PDA), a personal computer (PC), a laptop, a wireless device, or a combination of two or more thereof, wherein one or more of said e-banking touch points are communicatively coupled to said multi-channel server, and wherein at least one of said e-banking touch points is in communication with one or more financial institutions through said multi-channel server;* [**e-banking touch point communicates with bank(s)**]

---

[3] See Dkt. No. 1. Plaintiff only explicitly alleges infringement of claim 13, but Plaintiff states that Hyosung infringes "one or more of claims 1-20." This is inconsequential because every claim of the '508 Patent is ineligible for patent protection under § 101 as discussed more fully herein.

> *and a data storage device, wherein transactional usage data associated with a transaction initiated by a user through one of said e-banking touch points is stored in said data storage device and accessed by one or more of said other e-banking touch points;* [**bank customer's usage data is stored**]
>
> *wherein said active session is monitored via said server in real-time for selection of targeted marketing content correlated to said user-defined preferences, said targeted marketing content correlated to said user-defined preferences is selected subsequent to said monitoring and transmitted in real-time to at least one of said e-banking touch points for acceptance, rejection, or no response by a user, and wherein said response by said user is used during said active session to determine whether transmission of additional information related to said marketing content occurs during said active session.* [**monitoring bank customer and delivering targeted marketing content based on user preferences**][4]

The '508 Patent's other claims are all directed to the same abstract idea. Claims 1 and 7 are method claims that effectively recite the same claim elements: a multi-channel server that is connected to e-banking touch points; receiving and storing user data; monitoring the user's session at the e-banking touch point; selecting and transmitting targeted marketing material based on the user.[5] The dependent claims are also directed to the same abstract idea with insignificant additional claim limitations: usage data is stored in a customer profile (claims 2, 8, 14); customer preferences include name, language, an account, and monetary amount (claims 3, 9, 15); marketing content is approved or current content (claims 4, 10, 18); distribution of marketing is advertisement, messages, offers, or promotions (claims 5, 11, 19); transmitting *additional* information related marketing content during an active session (claims 6, 12, 20).

None of these added claim limitations change the focus of the claims: transmitting targeted marketing content to a bank customer while the customer uses an "e-banking touch point." For this reason, Hyosung treats claim 13 (reproduced above) as a representative claim.

---

[4] '508 Patent at claim 13, 10:35-11:4 (bracketed text is added)
[5] *See* '508 Patent at claims 1 and 7, 8:44-9:24; 9:41-10:19.

3

In order to implement the abstract idea, the '508 Patent discloses conventional components and technologies. For instance, the claimed "e-banking touch point" can be an ATM, a self-service coin counter, a plasma signage display touch point, or any other alternate e-banking touch points (*e.g.*, a kiosk), or *any combination thereof*.[6] Claim 13 includes some of those alternate touch points: a banking website, a PDA, a personal computer, a wireless device.[7] The "data storage device" is so conventional that there is no reference to it in the '508 Patent's specification. The multi-channel server is coupled to a computer system which is, again, generic. For instance, when discussing the server coupling with the computer system, the '508 Patent states that "IT personnel may access a console on a computer system 110 configured to permit monitoring of performance . . . *or any other applicable operational functions associated with the facilitation of a financial institutions remote touch points* . . ."[8] When discussing communication with the multi-channel server, the '508 Patent states that the devices can be "equipped with wireless transmission components that are compatible with Wi-Fi standard IEEE 802.11, BLUETOOTH enabled, a combination of local area network (LAN), wide area network (WAN), wireless area network (WLAN), personal area network (PAN) standards *or any other suitable means to permit secure wireless communication with multi-channel server 102*.[9] To the extent there is any question that the computer systems and multi-channel server are generic, here they are as identified in Figure 1:[10]

---

[6] '508 Patent at 3:33-38 (emphasis added).
[7] '508 Patent at claim 13, 10:44-50.
[8] '508 Patent at 3:56-61 (emphasis added).
[9] '508 Patent at 4:20-27 (emphasis added).
[10] '508 Patent at Fig. 1 (108 and 110 are the operations and marketing computer systems; 102 is the multi-channel server).



The '508 Patent does not and cannot claim to invent an improved ATM, e-banking kiosk, wireless device, or an improved networking technology. Instead, the '508 Patent claims the abstract idea of providing targeted marketing content in an e-banking system, while utilizing known, conventional components and technology.[11]

### III.   APPLICABLE LAW

The Patent Statute defines patentable subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."[12] The Supreme Court, however, has recognized important implicit exceptions: laws of nature, natural phenomena, and abstract ideas are not patentable. *Alice Corp. Pty. Ltd., v. CLS Bank Int'l,* 134 S. Ct. 2347, 2354 (2014). These exceptions are basic tools of innovation free for all to use. *Bilski v. Kappos,* 561 U.S. 593, 602 (2010).

The Supreme Court in *Alice* reaffirmed the two-step process to determine whether claims recite patent-eligible subject matter. *Alice*, 134 S. Ct. at 2355. The first step is to determine whether the claims at issue are directed to a patent-ineligible concept, such as an abstract idea. *Id*. If the claims recite an abstract idea, the court determines if there are additional claim elements that introduce an inventive concept sufficient to elevate the claims to patent-eligible subject matter. *Id*. The Federal

---

[11] '508 Patent at 1:18-23; 2:1-4 ("it is desirable to provide an innovative system and method . . . unifying e-banking touch pints and enabling a personalized customer experience.")
[12] 35 U.S.C. § 101.

Circuit has acknowledged that the steps "involve overlapping scrutiny." *Elec. Power Grp., v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). While the first step looks at the focus of the claims and their "character as a whole," the second step looks more closely at the claim elements. *Id*.

Whether a claim recites patent-ineligible subject matter is a question of law. *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1342 (Fed. Cir. 2018). The question "may be resolved on a 12(b)(6) motion when the undisputed facts require a holding of ineligibility." *Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 749 (Fed. Cir. 2019) (internal citation omitted); *see also NetSoc*, *LLC*, 2019 WL 3304704, at *3. This determination is a threshold inquiry that is properly decided on the pleadings, without claim construction. *See Ultramercial*, 772 F.3d at 717; *see also Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada (U.S.)*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012) ("no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under §101").

An extended claim-by-claim analysis is not necessary where the claims are "substantially similar and linked to the same abstract idea." *Content Extraction and Transmission, LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed Cir. 2014); *see also Alice*, 134 S.Ct. at 2359 (finding a single method claim "representative" of all claims across four patents). Here, the '508 Patent claims "contain only minor differences in terminology [and] require performance of the same basic process" and, therefore, "should rise or fall together." *Accenture Glob. Servs. v. GuideWire Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013) (citations omitted); *see also Planet Bingo, LLC v. VKGS LLC*, 576 Fed.App'x. 1005, 1007 (Fed. Cir. 2014) ("The system claims recite the same basic process as the method claims, and the dependent claims recite only slight variations of the independent claims"). Because all of the '508 Patent's claims "suffer from the same infirmity, [they] need not be considered further." *Ultramercial,* 772 F.3d at 712.

1. **Step One: Are the Asserted Claims Directed to an Abstract Idea?**

To decide eligibility, the court first determines whether the patent claims are directed to an abstract idea or, on the other hand, a solution to a technological problem. *In re TLI Communications LLC Patent Litigation*, 823 F.3d 607, 612-613 (Fed. Cir. 2016). The patent specification is helpful in determining to what the asserted claims are directed. *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019).

The Federal Circuit consistently finds patent claims directed to personalizing advertisements or marketing, like the '508 Patent's claims, to be abstract and invalid. *See Intellectual Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) ("This sort of information tailoring is a fundamental . . . practice long prevalent in our system . . ."); *In re Morsa*, 809 Fed. Appx. 913, 917 (Fed. Cir. 2020) ("We have explained that claims related to 'customizing information based on (1) information known about the user and (2) [specific] data' are directed to abstract ideas."); *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 887-89 (Fed. Cir. 2019) (claim directed to use of identifiers to "implement targeted marketing" held to be an invalid abstract idea).[13] Courts have additionally invalidated abstract ideas from many different subject matters, including: (1) monitoring and reporting on the movement of shipping containers; (2) price optimization; (3) refereeing a dart game; (4) monitoring and integrating physiologic treatment data; and (5) managing a bingo game.[14]

---

[13] This Court has held similar patents ineligible under Section 101 and the Federal Circuit affirmed those orders. *See e.g.*, *NetSoc, LLC v. Match Group, LLC*, 838 Fed.Appx. 544 (Fed. Cir. 2020) ("maintaining a list of participants, presenting a user with selectable categories, displaying participant information based on the selected category, shielding contact information, enabling the user to send a message to participants, tracking a response time to participants, and updating participant ratings are all human activities that the claims more efficiently organize by applying them to a network computer system"); *SAP America, Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1165-67 (claims for providing statistical analysis of investment information over an information network held to be ineligible under § 101).

[14] *See respectively*, (1) *Wireless Media Innovations, LLC v. Maher Terminals, LLC*, 100 F. Supp. 3d 405, 413 (D.N.J. 2015), aff'd, 636 F. App'x 1014 (Fed. Cir. 2016); (2) *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015); (3) *Gaelco S.A. v. Arachnid 360*, LLC, 293 F. Supp. 3d 783, 791

### 2. Step Two: Do the Asserted Claims Recite Additional Elements Sufficient to Transform the Asserted Claims Into Patent-Eligible Subject Matter?

At the second step, the court "examines the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 134 S. Ct. at 2357. If a claim is directed to an abstract idea, it "must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].'" *Id*. Reciting generic or conventional components that add nothing beyond their well-known functions does not transform an abstract idea into patentable subject matter. *Id.* at 2359-60; *see also Intellectual Ventures I*, 792 F.3d at 1370 ("our precedent is clear that merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea"). Instead, at step two, a claim may survive if it effects an improvement in a "technology or technical field." *Alice*, 134 S.Ct. at 2359-60.

## IV.   ARGUMENT

The '508 Patent claims are directed to transmitting targeted marketing content to an e-banking customer. This is the focus of the purported invention and an abstract idea of the kind the Federal Circuit routinely invalidates. *See e.g., Intellectual Ventures I*, 792 F.3d at 1369; *In re Morsa,* 809 Fed. Appx. 913, 917 (Fed. Cir. 2020).

Looking at the claim limitations more closely, as step two of *Alice* requires, it is apparent that the '508 Patent claims do not teach the use of unique components or inventive technologies. The '508 Patent, instead, recites generic computer and networking technology (*e.g.*, an ATM, data storage, and a server) to perform their standard functions (*e.g.*, receiving and transmitting information; storing and

---

(N.D. Ill. 2017), aff'd, 742 F. Appx 512 (Fed. Cir. 2018); (4) *Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co*., 916 F.3d 1363, 1367 (Fed. Cir. 2019); (5) *Planet Bingo*, 576 F.Appx. 1005, 1007-08 (Fed. Cir. 2014).

selecting data). This cannot transform the abstract idea into patentable subject matter, and '508 Patent claims are invalid as a matter of law. *See e.g., buySAFE, Inc. v. Google, Inc.*, 765 F3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive.").

### A. The '508 Patent's Claims Are Invalid Under 35 U.S.C. § 101

#### 1. Step One: The Asserted Claims Recite an Abstract Idea

The first step of the *Alice* inquiry requires looking at the "focus" of the asserted claims, "in light of the specification," to determine whether the claims are directed to an abstract idea. *Elec. Power Grp.*, 830 F.3d at 1352, 1356. Both the Federal Circuit and the Supreme Court have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases. *LendingTree, LLC v. Zillow, Inc.*, 656 F. App'x 991, 995 (Fed. Cir. 2016). Here, the focus of the '508 Patent claims is clear: providing targeted marketing content to e-banking customers. The specification emphasizes this focus: "unifying e-banking touch points and enabling a personalized customer experience."[15] This personalized customer experience "allows for robust distribution of advertisements and messages."[16]

Courts consistently find ideas like this to be invalid. In *Intellectual Ventures I v. Capital One Bank*, the Federal Circuit invalidated a patent directed to the abstract idea of "customizing information based on (1) information known about the user and (2) navigation data." 792 F.3d at 1369. The court noted that information tailoring is a long prevalent fundamental practice, and that there "is no dispute that newspaper inserts had often been tailored based on information known about the customer—for example, a newspaper might advertise based on the customer's location." *Id*. Similarly, the court noted that "television commercials for decades tailored advertisements based on the time of day during

---

[15] '508 Patent at 2:1-4.
[16] '508 Patent at 2:40-43.

9

which the advertisement was viewed. For example, a television channel might choose to present a commercial for children's toys during early morning cartoon programs but beer during an evening sporting event." *Id*. at 1370. Again, tailoring the information presented to the user is a "fundamental... practice long prevalent in our system" and, therefore, an abstract idea. *Id*.

The instant case is also very similar to *Bridge and Post v. Verizon Communications*. The asserted patent in that case was directed to the "use of persistent identifiers to implement targeting marketing," which the court held to be a fundamental practice "that dates back to newspaper advertisements." 778 F. App'x. 882, 887 (Fed. Cir. 2019). The patent owner argued that the patent was directed to technological solution to an internet-centric problem, but the court disagreed: "as we have previously held, claims related to customizing information based on (1) information known about the user and (2) specific data are directed to abstract ideas." *Id*. at 887-88 (*citing Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)) (cleaned up).

There are a number of other examples of both the Federal Circuit and district courts around the country invalidating patents similar to the '508 Patent. In *In re Morsa*, the Federal Circuit affirmed that the patent's claim was directed to the concepts of "targeted advertisements for a user and using a bidding system to determine how the advertisements will be displayed." 809 F. App'x. 913, 916–917 (Fed. Cir. 2020). The court reasoned that "both targeted advertising and bidding to display the advertising" are abstract ideas relating to customizing information based on the user and are, therefore, directed to the "abstract idea and fundamental economic practice of organizing human activity." *Id*.

In *OpenTV v. Netflix*, the Northern District of California invalidated a patent directed to targeted advertising outside of the home. 76 F. Supp. 3d 886 (N.D. Cal. 2014). The patent explained that "a person who uses a credit card at a gas pump may be identified, and then targeted for advertising on a display screen on the pump." *Id*. at 892. So the *OpenTV* patent targeted advertisements to users at

other locations, like a gas pump, instead of at an ATM, like the '508 Patent.[17] The court found that this patent was directed to an ineligible abstract idea: "The concept of gathering information about one's intended market and attempting to customize the information then provided is as old as the saying, 'know your audience.'" *Id.* at 893.

In a similar case, the District of Arizona invalidated a patent that exchanged specific information between vendors. The court found that "as far back as the pre-Civil War era, humans have acquired geographic and demographic data and used a printing service to reach a targeted audience . . . The patent essentially computerizes a longstanding economic practice." *USADATA Inc. v. DataWidget LLC*, No. CV-21-00526-PHX-DLR, 2021 WL 5084283, at *2 (D. Ariz. Nov. 1, 2021). The patent owner argued that the patent was directed to an inventive system, but the court disagreed because the claimed system was a "commonplace protocol for exchanging information . . . And mere information exchange is an abstract idea, even when performed by computers or otherwise technologically restricted." *Id.*; *see also Phoenix Licensing, LLC v. Consumer Cellular Inc.*, No. 2:16-CV-0152-JRG-RSP, 2017 WL 1065938, at *18 (E.D. Tex. Mar. 8, 2017), *report and recommendation adopted*, No. 216CV00152JRGRSP, 2017 WL 1177988 (E.D. Tex. Mar. 30, 2017) (claims directed to "tailoring marketing communications to recipients" held to be an abstract idea).

Because the '508 Patent claims are directed to a common abstract idea, this Court's analysis should proceed to step 2.

---

[17] Targeted marketing specifically in e-banking is not a meaningful limitation. *See Elec. Power Grp.*, 830 F.3d at 1354 ("Most obviously, limiting the claims to a particular technological environment . . . is, without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core."); *see also In re TLI Commc'ns LLC Patent Litigation*, 823 F.3d 607, 613 (Fed. Cir. 2016) ("although the claims limit the abstract idea to a particular environment – a mobile telephone system – that does not make the claims any less abstract for the step 1 analysis").

### 2. Step Two: The Asserted Claims Do Not Recite Inventive Concepts that Transform the Recited Abstract Idea Into Patent-Eligible Subject Matter

To qualify as patent-eligible subject matter, a claim must recite "significantly more" than the abstract idea, for example by improving an existing technological process, and not merely by implementing the idea on a computer or other conventional technologies. *See Alice*, 134 S. Ct. at 2355-58. And, importantly, the purported inventive concept cannot be the abstract idea itself. *ChargePoint*, 920 F.3d at 774-75. (appellant "points to the ability to operate charging stations remotely as solving a problem in the field. This, again, merely mirrors the abstract idea itself and thus cannot supply an inventive concept.")

The '508 Patent claims fail to add any inventive technical features that go beyond the abstract idea. The claims, instead, recite using conventional components in a conventional manner – *e.g.*, a server, a data storage device, and an e-banking touch point, which can be anything from an ATM to a mobile phone.[18] This is not an inventive concept. *See Intellectual Ventures I*, 793 F.3d at 1370 ("Requiring the use of a 'software' 'brain' 'tasked with tailoring information and providing it to the user' provides no additional limitation beyond applying the abstract idea, restricted to the Internet, on a generic computer.").

The '508 Patent's specification only emphasizes the patent's recitation of off-the-shelf components and technologies. The "e-banking touch points" can include ATMs, a self-service coin counter, a plasma signage display touch point, alternate e-banking system touch points (*i.e.*, literally anything else that could provide e-banking), or *any combination* of these touch points.[19] Similarly, customers of the financial institution "may interact with multi-channel server 102 via an Internet network 114 utilizing web-enabled customer devices," which can include a PDA, a PC, a laptop, *or*

---

[18] '508 Patent at claim 13, 10:35-11:4.
[19] '508 Patent at 3:33-38.

*any other suitable web-enabled device or system.*[20] There is essentially no limit to how the wireless transmission components can communicate with one another: Wi-Fi, Bluetooth, LAN, WAN, WLAN, PAN, or, again, "*any other suitable means to permit secure wireless communications with multi-channel server 102.*"[21]

Simply put, "nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology . . . [or] contains any suggestion that the displays needed for that purpose are anything but readily available . . . invocations of computers and networks that are not even arguably inventive are 'insufficient to pass the rest of an inventive concept in the application' of an abstract idea." *Elec Power Grp.*, 830 F.3d at 1355 (collecting cases); *see also Ultramercial*, 772 F.3d at 715 ("additional features must be more than well-understood, routine, conventional activity"). The '508 Patent teaches utilizing "generic computer processors, databases, and internet technology [to] implement the basic idea, with certain perceived greater advantages, [which] does not give rise to a patentable method." *OpenTV*, 76 F. Supp. at 893.

Nothing in the '508 Patent even suggests that the generic components function in an unconventional manner – whether by themselves or in combination with each other – or employ inventive concepts. There is nothing inventive about using the claimed, conventional devices, whether it is an ATM, a laptop, a server, or a generic "data storage device," and the '508 Patent specification's discussion of these components is limited to "abstract functional descriptions devoid of technical explanation as to how to implement the invention." *In re TLI*, 823 F.3d at 615; *see also buySAFE*, 765 F.3d at 1355 ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *USADATA Inc.*, 2021 WL at *3 ("The components

---

[20] '508 Patent at 4:9-15.
[21] '508 Patent at 4:19-27.

13

perform generic functions: exchanging information . . . Such generic language does not reveal an inventive concept.").

The '508 Patent's claims are directed to the abstract idea of targeted advertising in an e-banking setting, utilizing conventional components and technology, and are patent-ineligible subject matter under 35 U.S.C. § 101.

## V.   CONCLUSION

"Even taking [Plaintiff's] complaint at face value, its claims are directed to only patent ineligible abstract ideas, and fail to articulate an inventive concept that transforms those ideas into patent eligible subject matter." *NetSoc, LLC*, 2019 WL 3304704, at *3. Accordingly, Hyosung respectfully requests that the Court find the '508 Patent claims to be directed to patent-ineligible subject matter and invalid pursuant to 35 U.S.C. §101, and dismiss Plaintiff's complaint with prejudice. *See Maxon, LLC v. Funai Corp., Inc.,* 255 F. Supp. 3d 711, 722 (N.D. Ill. 2017), *aff'd*, 726 F. App'x 797 (Fed. Cir. 2018) ("Because the patents are directed at subject matter that is not patent eligible as a matter of law, leave to amend would be futile, so the dismissal is with prejudice.")

Dated: December 1, 2021

Respectfully submitted,

**HOLLAND & KNIGHT LLP**

/s/ *Justin S. Cohen*
**Justin S. Cohen**
SBN 24078356
Justin.Cohen@hklaw.com
One Arts Plaza
1722 Routh St., Suite 1500
Dallas, Texas 75201
214.969.1751 (Fax)

**Daniel J. Barsky** (*pro hac vice forthcoming*)
FL State Bar No. 25713
Daniel.Barsky@hklaw.com
701 Brickell Ave., Suite 3300
Miami, Florida 33131

**Anthony J. Fuga** (*pro hac vice forthcoming*)
150 N. Riverside
Chicago, IL 60606
Tel: (312) 263-3600
Fax: (312)578-6666
anthony.fuga@hklaw.com

**ATTORNEYS FOR DEFENDANT
NAUTILUS HYOSUNG AMERICAS, INC. D/B/A
HYOSUNG AMERICAS**

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2021 I served the above paper on opposing counsel of record by filing with the Clerk of Court using the CM/ECF system, which will send notification of such filing via electronic mail to all counsel of record.

/s/ *Justin S. Cohen*
Justin S. Cohen